[Cite as *Madyda v. Ohio Dept. of Pub. Safety*, 2024-Ohio-3201.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kellie Madyda et al., | : | |
| Plaintiffs-Appellants, | : | No. 24AP-53 |
| | | (Ct. of Cl. No. 2019-00426JD) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Public Safety, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 22, 2024

**On brief:** *DannLaw*, *Marc E. Dann,* and *Brian D. Flick*, and *Zimmerman Law Offices, P.C.*, and *Thomas A. Zimmerman, Jr.*, for appellants. **Argued:** *Marc E. Dann.*

**On brief:** *Dave Yost*, Attorney General, and *Peter E. DeMarco, Vorys, Sater, Seymour and Pease LLP, Marcel C. Duhamel*, and *Karey E. Werner*, for appellee. **Argued:** *Marcel C. Duhamel.*

APPEAL from the Court of Claims of Ohio

EDELSTEIN, J.

{¶ 1} In this appeal, we consider whether certified class members who were charged a $1.50 fee by Bureau of Motor Vehicle deputy registrars for laminating state-issued driver's licenses, temporary instruction permits, and identification cards (collectively "credentials") between July 2, 2018 and ending on July 2, 2019 (the "relevant time period") can recover from defendant-appellee, Ohio Department of Public Safety ("DPS"), for unjust enrichment. At issue is whether, under the versions of R.C. 4507.23 and 4507.50 in effect during the relevant time period, deputy registrars were statutorily

permitted to collect a lamination fee from the class members after DPS transferred the production of identification credentials from the deputy registrars to a private company.

{¶ 2} For the following reasons, we find they were permitted to do so and affirm the judgment below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

{¶ 3} DPS is responsible for administering and enforcing "the laws pertaining to the licensing of drivers of motor vehicles." R.C. 5502.01(A). The Ohio Bureau of Motor Vehicles ("BMV") is a division of DPS and is administered by the Registrar of Motor Vehicles ("Registrar") in accordance with R.C. 4501.02(A). (Dec. 11, 2023 Am. Joint Stip. at ¶ 1-2.) The Director of Public Safety appoints the Registrar to, among other functions, administer the laws with respect to the licensing of motor vehicles, and the Registrar serves at the Director of Public Safety's pleasure. *See* R.C. 4501.02(A).

{¶ 4} To assist in administering these laws, the Registrar appoints deputy registrars. *See* R.C. 4503.03(A) and 4507.01(B). (Am. Joint Stip. at ¶ 3.) "Any act of an authorized deputy registrar * * * under direction of the [R]egistrar is deemed an act of the [R]egistrar." R.C. 4507.01(B). Deputy registrars are independent contractors who perform duties on behalf of DPS, including issuing driver's licenses, temporary instruction permits, and identification credentials. *See* R.C. 4503.03(C)(1); R.C. 4507.01(B). (Am. Joint Stip. at ¶ 4-5.)

{¶ 5} Prior to July 2, 2018, deputy registrars printed, laminated, and issued credentials on-site using equipment and supplies provided by DPS. (Am. Joint Stip. at ¶ 6.) To compensate for the costs of creating, printing, and laminating each credential, the versions of R.C. 4507.23(F) and 4507.50(A) in effect at that time permitted deputy registrars to charge and collect a lamination fee in an amount not exceeding $1.50 ("lamination fee"). The deputy registrars sent a portion of the fee to the Registrar to cover the expense of the laminating equipment and supplies, and were authorized to retain the balance of that fee.

{¶ 6} Specifically, former R.C. 4507.23(F) and former 4507.50(A) both provided:

> Neither the registrar nor any deputy registrar shall charge a fee in excess of one dollar and fifty cents for laminating a [credential] * * *. A deputy registrar laminating a [credential] shall retain the entire amount of the fee charged for

lamination, less the actual cost to the registrar of the laminating materials used for that lamination, as specified in the contract executed by the bureau for the laminating materials and laminating equipment. The deputy registrar shall forward the amount of the cost of the laminating materials to the registrar for deposit as provided in this section.

{¶ 7} After advancements in modern travel necessitated a nationally recognized identification system, the procedures used to create and issue credentials changed. Beginning July 2, 2018, DPS moved the actual production of credentials from the deputy registrars to Veridos America, Incorporated ("Veridos"), a private company. (Am. Joint Stip. at ¶ 7-8.) As a result, deputy registrars ceased printing, laminating, and issuing credentials on-site. (Am. Joint Stip. at ¶ 8.) Instead, Veridos creates and mails the credential directly to a qualifying individual after they visit a deputy registrar agency and pay the deputy registrar all required fees. (*See* Am. Joint Stip. at ¶ 8-11.) Veridos sends DPS a monthly invoice detailing the number of credentials it produced, and DPS pays at least $1.41 for every credential created as compensation for the services Veridos performs, including lamination. (*See* Am. Joint Stip. at ¶ 7, 18.)

{¶ 8} Although the procedures for creating and issuing credentials changed, the laws authorizing deputy registrars to collect the lamination fee were not immediately amended to reflect those changes. Thus, between July 2, 2018 and July 2, 2019, deputy registrars continued charging and collecting lamination fees for each credential issued despite no longer creating and providing credentials on-site. (*See* Am. Joint Stip. at ¶ 12.) And, because deputy registrars no longer incurred any lamination-related expenses, deputy registrars retained all lamination fees collected during the relevant time period. (Am. Joint Stip. at ¶ 13.)

{¶ 9} Eventually, the Ohio General Assembly modified the relevant statutory language to better reflect the credential issuing procedure adopted by DPS. Effective July 3, 2019, R.C. 4507.23(F) now provides:

The registrar and any deputy registrar may charge a fee for the authentication of the documents required for processing a [credential] * * * as follows:

(1) One dollar and fifty cents for a temporary instruction permit;

(2) One dollar and fifty cents for a license issued to a person who is less than twenty-one years of age;

(3) One dollar and fifty cents for a license that will expire on the applicant's birthday four years after the date of issuance;

(4) Three dollars for a license that will expire on the applicant's birthday eight years after the date of issuance.

A deputy registrar that authenticates the required documents for a [credential] shall retain the entire amount of the fee.

**{¶ 10}** Amended R.C. 4507.50(B)(1)(c) likewise now states, in relevant part, as follows:

an applicant * * * shall pay * * * prior to issuance of [a credential] * * * [a] fee of one dollar and fifty cents * * * for the authentication of the documents required for processing an identification card or temporary identification card. A deputy registrar that authenticates the required documents shall retain the entire amount of the fee.

**{¶ 11}** Before this legislation took effect, deputy registrars issued 3,423,315 credentials from July 2, 2018 until July 2, 2019. (Am. Joint Stip. at ¶ 12.) During this time, the deputy registrars charged the $1.50 lamination fee for each credential issued and, by doing so, collected a total of $5,134,972.50. (Am. Joint Stip. at ¶ 12-13.) Deputy registrars did not remit—and have not remitted—to the BMV or DPS any portion of the lamination fees collected during the relevant time period. (*See* Am. Joint Stip. at ¶ 14-15.) Instead, DPS used taxpayer funds to pay Veridos for its contractual services between July 2, 2018 and July 2, 2019.[1] (Am. Joint Stip. at ¶ 18.)

**{¶ 12}** As a result, plaintiffs-appellants, Kellie Madyda, individually, and as legal representative for E.M. (a minor), David Cornelius, Aaron Hoyt, and Caitlin Rader ("appellants") initiated this class action against DPS in March 2019 in the Court of Claims of Ohio alleging that the purported class was improperly charged the $1.50 lamination fee because deputy registrars no longer provided the services associated with the fee.

---

[1] During the relevant time period, DPS/the BMV directly collected $11,767.50 in lamination fees. (Am. Joint Stip. at ¶ 14.) Those fees are not at issue in this case.

Specifically, appellants contended that, in charging the lamination fee for a service they did not provide, the deputy registrars exceeded the statutory authority conferred by former R.C. 4507.23(F) and 4507.50(A), thus violating the Ohio Constitution's due course of law guarantee in Article I, Section 16. (*See* Mar. 28, 2019 Compl. at ¶ 34-41.) Appellants further alleged that DPS was unjustly enriched by the deputy registrars' retention of lamination fees collected during the relevant time period. (Compl. at ¶ 42-47.)

{¶ 13} The trial court certified the class in March 2020,[2] defined as follows: "All individuals who were issued an Ohio credential and were charged a lamination fee that was paid by the Ohio credential holder or paid on the Ohio credential holder's behalf to a Deputy Registrar for the State of Ohio on or after July 2, 2018 until July 2, 2019." (Emphasis omitted.) (Mar. 20, 2020 Decision at 4.) We affirmed that class certification in *Madyda v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 20AP-217, 2021-Ohio-956, *appeal not accepted*, 2021-Ohio-3336.

{¶ 14} After hearing this case on stipulated facts, the trial court rendered judgment in favor of DPS on December 22, 2023. Appellants timely appealed from that judgment and raise a sole assignment of error for our review:

> The trial court erred in granting judgment to [DPS] as matter of law.

## II. ANALYSIS

{¶ 15} In rendering judgment in favor of DPS, the trial court initially concluded the deputy registrars stood in place of the Registrar when collecting the lamination fees from appellants and the certified class members between July 2, 2018 and July 2, 2019. (Dec. 22, 2023 Decision at 6.) The trial court also noted the absence of any evidence suggesting the Registrar instructed the deputy registrars to stop collecting lamination fees during the relevant time period. (Decision at 6.) And, because the parties maintained throughout the pendency of the case that DPS was the proper defendant, the trial court declined to distinguish the acts of the deputy registrars from those of the Registrar for purposes of its decision. (Decision at 6.)

---

[2] After notifying the identified class members, 2,387 identified class members excluded themselves from the class. (Am. Joint Stip. at ¶ 19-20.) The lamination fees collected from these class members totaled $3,580.50. (Am. Joint Stip. at ¶ 20.) Thus, the lamination fees charged and collected by deputy registrars for credentials issued to the remaining identified class members who did not exclude themselves from the class totaled $5,131,392. (Am. Joint Stip. at ¶ 21.)

{¶ 16} The propriety of these determinations is not at issue on appeal. Instead, appellants take issue with the trial court's interpretation of the relevant statutes to conclude that former R.C. 4507.23(F) and 4507.50(A)[3] clearly and unambiguously permitted DPS—through its Registrar and deputy registrars—to charge and collect the lamination fee from appellants and the certified class during the relevant time period. (*See* Decision at 7-9.)

{¶ 17} We begin with the standard of review. "[I]ssues of statutory construction constitute legal issues that we decide de novo on appeal." *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Rev.,* 150 Ohio St.3d 386, 2016-Ohio-7582, ¶ 8. In any case concerning the meaning of a statute, our focus is the text. " '[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.' " *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, ¶ 38, quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). When a statute is unambiguous, we must "apply it, not interpret it." *Specialty Restaurants Corp. v. Cuyahoga Cty. Bd. of Revision*, 96 Ohio St.3d 170, 2002-Ohio-4032, ¶ 11.

{¶ 18} On review, we find the meaning of the first sentence of former R.C. 4507.23(F) ("Neither the registrar nor any deputy registrar shall charge a fee in excess of one dollar and fifty cents for [laminating a credential] * * *") is plain and unambiguous: it authorized a deputy registrar to charge and collect a fee of up to $1.50 for laminating a credential. The phrase "for laminating" describes the type of fee collected, not the conduct of the deputy registrar. Indeed, the first sentence of former R.C. 4507.23(F) does not require lamination services be provided by deputy registrars on-site or prohibit third-party vendors from laminating credentials at another location. Irrespective of who does the laminating, deputy registrars—acting on behalf of the Registrar—charge and collect the lamination fees. Consequently, whether the deputy registrars performed the lamination themselves is irrelevant, so long as the fee was "for laminating" and the credential was, in fact, laminated. Here, it is undisputed that all credentials at issue in this case were laminated. And appellants do not claim the class members were overcharged for lamination of their credentials.

---

[3] Because the relevant language in these two provisions is the same, we focus our analysis on former R.C. 4507.23(F).

{¶ 19} Contrary to appellants' position, the second and third sentences of former R.C. 4507.23(F)—which relate to deputy registrars' *retention* of lamination fees that were collected—have no bearing on the issue of whether deputy registrars were permitted to *collect* a lamination fee from appellants and the certified class during the relevant time period. ("A deputy registrar laminating a [credential] shall retain the entire amount of the fee charged for lamination, less the actual cost to the registrar of the laminating materials used for that lamination, as specified in the contract executed by the bureau for the laminating materials and laminating equipment. The deputy registrar shall forward the amount of the cost of the laminating materials to the registrar for deposit as provided in this section.") Nor do these sentences regarding retention of lamination fees somehow create an ambiguity in the meaning of the first sentence concerning collection.

{¶ 20} Significantly, appellants do not contend on appeal that former R.C. 4507.23(F) is ambiguous. Having found no ambiguity in that provision, our inquiry thus ends with the statutory text. For these reasons, appellants' contention that the deputy registrars' charging and collection of a $1.50 lamination fee during the relevant time period was unlawful is not well-taken.

{¶ 21} Because DPS—through the Registrar and deputy registrars—did not violate former R.C. 4507.23(F) when it charged and collected the lamination fee from appellants and the class members, appellants' unjust enrichment claim likewise fails.

{¶ 22} A successful claim of unjust enrichment requires a showing that (1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment. *Bunta v. Superior VacuPress, L.L.C.*, 171 Ohio St.3d 464, 2022-Ohio-4363, ¶ 36, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). "Unjust enrichment is an equitable claim based on a contract implied in law." *Bunta* at ¶ 36, citing *Hummel v. Hummel*, 133 Ohio St. 520, 525-28 (1938). *See also Parmater v. Internet Brands, Inc.*, 10th Dist. No. 14AP-391, 2015-Ohio-253, ¶ 27. The remedy for unjust enrichment is equitable restitution based not upon a plaintiff's loss, but a defendant's gain. *See Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, ¶ 23-28. Indeed, the purpose of an unjust enrichment claim "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for

the benefit he has conferred on the defendant." *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954).

{¶ 23} In analyzing appellants' unjust enrichment claim, the trial court noted that DPS—not individual deputy registrars—is the named defendant in this case. (Decision at 10.) Although DPS may have a claim that the deputy registrars should have remitted the lamination fees collected during the relevant time period under former R.C. 4507.23(F), that issue is not the subject of this case. Rather, even assuming DPS, the Registrar, and deputy registrars are one-and-the-same for purposes of receiving the collected lamination fees, appellants received the benefit for which they paid: laminated credentials. This is significant because the version of R.C. 4507.13(A) in effect during the relevant time period mandated that all issued credentials "be of such material and so designed as to prevent its reproduction or alteration without ready detection and, to this end, ***shall be laminated*** with a transparent plastic material." (Emphasis added.)

{¶ 24} DPS paid Veridos for its services using taxpayer funds at a cost of $1.41 per credential. (*See* Am. Joint Stip. at ¶ 18.) It follows, then, that DPS's recoupment of those funds from recipients of those laminated credentials—appellants and members of the class—in a manner and amount authorized by former R.C. 4507.23(F) did not unjustly enrich DPS, regardless of whether DPS or the deputy registrars retained the lamination fee.

{¶ 25} For these reasons, we find the trial court did not err in entering judgment in favor of DPS. Accordingly, we overrule appellants' assignment of error.

## III. CONCLUSION

{¶ 26} Having overruled appellants' sole assignment of error, we affirm the December 22, 2023 judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

LUPER SCHUSTER and JAMISON, JJ., concur.